## Boyer Estate

*M. Paul Smith*, of *Smith, Aker, Grossman, Hollinger & Jenkins*, and *Bruce L. Castor* and *H. Ober Hess*, of *Ballard, Spahr, Andrews & Ingersoll*, for accountants.

*James J. Cloran*, of *Drinker, Biddle & Reath*, for widow.

TAXIS, P. J., March 14, 1973.—The account of Girard Trust Bank, Markley H. Boyer and Paul B. Branin, executors, was examined and audited by the court on March 5, 1973.

The account shows a net balance of principal and income for distribution of $61,121,300.01, composed of the securities set forth on pages 2, 3, 4, 5, 6 and 7 of the account, real estate known as Treverigg Farm $465,000, and cash.

After the filing of the account, the accountants, on February 21, 1973, paid Pennsylvania transfer inheritance tax of $2,829,055.22, and also paid Federal estate taxes of $13,397,957.17. Accountants are

credited with these disbursements, and the same shall be reflected in the schedule of distribution hereinafter directed to be filed.

Francis Boyer died testate on May 21, 1972, survived by his wife, Marian Angell Boyer, a son, Markley H. Boyer, and his daughter, Robin Hambro. The surviving spouse elected to take against the will, said election being filed with the register on June 15, 1972.

A number of questions have been presented for adjudication.

### DIVISION OF INCOME

Accountants ask the court to determine how the income earned during the administration of the estate should be divided among the several beneficiaries, i.e., the widow, the charities under Item Twelfth and the legatees of the balance of residue. Section 3543(d) of the Probate, Estates and Fiduciaries Code provides, in parts here pertinent, as follows:

"All income from real and personal estate earned during the period of administration . . . shall be distributed pro rata among the . . . persons entitled to the residuary estate."

This section does not specifically provide for the allocation of a portion of the income to the elective share of the widow. However, the Supreme Court, in Fitzgibbon's Estate, 276 Pa. 105, tacitly recognized that the elective share of a surviving spouse does participate in income earned during administration. On the strength of this case, the court, therefore, concludes that the elective share of Mrs. Boyer is entitled to a share of income as if it were a share of residue.

Item Twelfth of decedent's will gives the residue of his estate, but not more than $10,000,000, to certain designated charities (25 in number).

Item Twelfth, in the last paragraph, provides as follows:

"The balance of residue, if any . . . I hereby add to the legacies given in Items EIGHTH (A), EIGHTH (B) and NINTH above in the proportions, respectively, of 29/70ths, 1/70th and 40/70ths."

The $10,000,000 limitation above mentioned is applicable here since the remainder of the estate is more than sufficient to pay the charitable legacies in full. The court concludes that these charities are also entitled to a share of the income because the decedent clearly included these charities among his residuary beneficiaries: section 3543(d), supra.

## INTO WHAT PROPORTIONS SHOULD THE INCOME BE DIVIDED?

The more difficult question here, however, concerns proportions in which the income should be divided. This court had resolved a similar problem in Gentle Estate, 22 Fiduc. Rep. 352, by the use of a changing fraction formula. The court is impressed with the thoroughness and with the equitable approach that the accountants have employed. The court quotes from the petition for adjudication as follows:

"The further question is in what proportions should the income be divided? During the period of administration covered by the account, there have been substantial changes in principal occasioned by repayment of a $15,015,384.62 loan which was outstanding at the time of death, by distributions and by realization of gains and losses. Because these changes affect the several distributees differently, it would seem equitable that the division of income not be based on fixed proportions. The executors, therefore, suggest that the income be divided on the basis of a changing fraction depending on the period in which the income was

earned. Cf. Gentle Estate, 22 Fiduc. Rep. 352 (O.C. Montg. 1972. They suggest that the administration of the estate be divided into the following periods (selected because they correspond to the timing of substantial changes in principal) and that the income for these periods be divided on the basis of the proportionate interests in principal of the several beneficiaries at the beginning of the period:

"(1) May 21, 1972 (date of death) to July 15, 1972 (date by which pecuniary legacies were substantially paid and payment made on account of loan).

"(2) July 16, 1972 to August 30, 1972 (date by which substantial further payments were made on account of loan).

"(3) August 31, 1972 to September 30, 1972 (date by which balance of loan was paid).

"(4) October 1, 1972 to December 31, 1972 (date by which half of charitable legacies were paid and a payment on account was made to widow).

"(5) January 1, 1973 to February 21, 1973 (date by which death taxes were paid).

"(6) February 22, 1973 forward.

"In determining the income applicable to each of these periods, the executors suggest that the cash basis be used with two adjustments: (1) the interest on the $15,015,384.62 loan should be applied first against the interest received on the U. S. Treasury bonds which the proceeds of the loan were used to purchase and the remaining interest should be charged on a per diem basis; (2) the dividend of $367,214.50 received on 734,429 shares of Smith, Kline & French Laboratories on September 9, 1972 should be allocated on a per diem basis over the period of May 21, 1972 to September 9, 1972. It is pointed out that the last previous dividend record date was May 11, 1972, ten days prior to the date of death. However, inasmuch

as no portion of that dividend is estate income and the entire September dividend is estate income it is believed equitable to relate the September dividend to a starting date of May 21, the date of death. Applying these principles, the income earned through December 31, 1972, is divisible as follows:

| "Period | Mrs. Boyer | Charities | Balance |
|---|---|---|---|
| 5/21/72-7/15/72 | $ 58,778.14 | $ 23,587.34 | $ 93,968.95 |
| 7/16/72-8/30/72 | 45,067.54 | 18,435.19 | 65,203.08 |
| 8/31/72-9/30/72 | 21,538.03 | 9,535.68 | 29,814.13 |
| 10/1/72-12/31/72 | 155,256.52 | 77,032.02 | 203,379.54 |
| TOTAL | $280,640.23 | $128,590.23 | $392,365.70 |

"For the period January 1, 1973 through February 21, 1973 (date on which inheritance and estate taxes were due and paid), the fractions for the division are as follows:

| Mrs. Boyer | Charities | Balance |
|---|---|---|
| .3884521 | .0977553 | .5137926 |

"For the period commencing February 22, 1973, the fractions for the division are as follows:

| Mrs. Boyer | Charities | Balance |
|---|---|---|
| .4958760 | .1326697 | .3714543" |

The court finds as a fact and concludes as a matter of law that the proportions set forth above are fair, proper and equitable, and adopts these proportions as stated.

## TREATMENT OF STATUTORY INTEREST

Decedent's will left some pecuniary legacies in trust which are entitled to be credited with three percent interest from the date of death under the provisions of section 3543(a) of the Probate, Estates and Fiduciaries

Code of June 30, 1972, no. 164. It is suggested in the petition for adjudication that the three percent item should be treated as a matter of distribution and not as an administration expense, with the result that the widow's share of income would bear no part of it. Since the three percent addition is an arbitrary statutory supplement to a legacy in trust without regard to the rate of income earned by the estate, the proposed treatment would appear correct and is approved.

## EXECUTORS' COMMISSIONS

The court has been asked to pass upon the propriety and reasonableness of commissions to the executors in the following amounts:

| | |
|---|---|
| Girard Trust Bank | $375,000 |
| Paul B. Branin | 93,750 |
| Markley H. Boyer | 37,500 |
| TOTAL | $506,250 |

At the time of audit, the accountants submitted to the court two letters, dated December 15, 1970, and January 11, 1971, in which Girard Trust Bank agreed with decedent that its compensation for services as executor would be at the rate of one percent of the principal value with a maximum fee of $250,000, and that there would be no compensation on income. The individual executors were not parties to these letters but the rate of their compensation as co-executors were provided to be 25 percent and 10 percent, respectively, of the amount payable to Girard Trust Bank. The above requests are in excess of those specified in those letters. For the reasons which are fully and carefully set out for the court in the petition for adjudication, the court approves these suggested amounts and makes awards as therein set out. The explanation of the executors, which the court believes fully justified the requested amounts, is as follows:

"The executors respectfully suggest that the requested compensation should be allowed, notwithstanding the letters. As the first paragraph of the letter of December 15, 1970, states, the agreement between the decedent and Girard Trust Bank was based on the assumption that the gross estate would be approximately $40,000,000. This estimate was substantially below the actual inventory value of $74,758,-908.55. Furthermore, neither Girard Trust Bank nor the decedent anticipated the complications and the extent of the responsibility which were ultimately involved in the administration. Particular reference is made to the fact that the estate included 783,929 shares of Smith, Kline & French Laboratories common stock at a total value of $42,969,108.31, representing approximately 4.9% of the total outstanding common stock of Smith, Kline & French Laboratories. Because of this fact and because of the prior connections of the decedent with Smith, Kline & French Laboratories, the executors were subject to the substantial restrictions of the Securities Act of 1933 in disposing of this substantial holding. They were required to undertake vital negotiations and to make important decisions as to the timing, method and price of such dispositions. The bulk of the Smith, Kline & French Laboratories common stock, (i.e., 600,000 shares) were sold in a secondary underwriting registered with the Securities & Exchange Commission on which closing was held September 28, 1972 at a substantial gain to the estate. In preparation for this underwriting, the executors were involved in a long series of conferences and negotiations with the management of Smith, Kline & French Laboratories, the underwriters, represented by Smith, Barney & Co., Incorporated, the underwriters' counsel, Davis Polk & Wardwell and with underwriters of Securities Act Liability Insurance. In

addition to the shares sold through the secondary underwriting, most of the remaining shares have been sold in transactions controlled by the SEC through its Rule 144.

"The suggested compensation of the executors is determined as follows. The actual inventory value of the estate is $74,758,908.55. This value, however, includes assets which were derived from a loan of $15,015,384.-62 from Girard Trust Bank which the decedent made shortly before his death and which was still outstanding at the time of his death. Because of this fact, the executors suggest that for purposes of determining compensation, the actual value of the estate be assumed to be $60,000,000. Since the compensation of the executors mentioned in the letters of December 15, 1970 and January 11, 1971, was based on an assumed maximum estate of $40,000,000, the executors suggest that their compensation should be increased to an amount which bears the same ratio to the figure stated in the letters as the gross estate of $60,000,000 bears to the estimated gross estate of $40,000,000. The amounts requested are determined by this ratio."

## FEE TO COUNSEL FOR EXECUTORS

The court is asked to determine the propriety of and to allow compensation to Ballard, Spahr, Andrews & Ingersoll, counsel for the executors, in the total amount of $585,000. This amount is approximately one percent of the gross testamentary estate after deduction of decedent's $15,015,384.62 loan, and represents services beyond the customary services involved in the usual large estate. In this case particularly, counsel was required to perform substantial services in determining the rights and limitations of the fiduciaries in the disposition of the Smith, Kline & French

common stock and required them to perform all the SEC and corporate work for executors in connection with the underwritten sale and to negotiate Securities Act liability insurance which was a condition of the underwriting.

Counsel has also done extensive and crucial work in tax planning, and it is anticipated that it will be required to perform substantial further services with respect to the audit of the Federal estate tax return. The suggested fee of $585,000 is intended to include all of these services except such as might be involved in actual court litigation of the Federal estate tax liability. The court approves said counsel fee and it is herewith awarded.

Another question concerning allocation of the counsel fee also need be resolved by the court. The court concludes that a reasonable division of the $585,000 counsel fee would be to charge the widow with $116,667 and the residue the balance of $468,333. The court has been advised that these figures and the allocation thereof have been discussed with counsel for the widow and have their approval. This allocation is, therefore, approved as suggested.

## INTEREST IN DECEDENT'S REAL ESTATE

The court is asked to award decedent's real estate to Markley H. Boyer in accordance with Item Sixth of the will.

Item Sixth provides a gift to decedent's son, Markley H. Boyer, of his farm in East Nantmeal Township, Chester County, Pa., together with improvements and equipment if his son does not disclaim the gift "before the date prescribed by the Internal Revenue Code for the filing of the Estate Tax Return for my estate." By letter dated February 7, 1973, Markley H. Boyer irrevocably surrendered his right to disclaim and, there-

fore, the said real estate with equipment and improvements would seem properly distributable to him. Said real estate is herewith awarded to Markley H. Boyer.

## POSSIBLE SECURITIES ACT LIABILITIES AND RESERVE FOR SELF-INSURED RETENTION UNDER SECURITIES ACT LIABILITY INSURANCE

The court is asked to determine that adequate provision has been made to comply with section 3388 of the Probate, Estates and Fiduciaries Code with respect to theoretically potential claims under the securities laws of the United States, or any State, and is further requested to direct a reserve of $200,000 to cover the self-insured retention accepted by the executors in negotiating the Seaboard Surety Company liability insurance.

The narrative recitations of executors in their petition for adjudication are full and complete and are set forth as follows:

"Securities laws impose certain possible liabilities on the seller of securities including securities registered under those laws. Although the executors maintain that they were not subject to the registration requirements of the federal securities laws in connection with the sale of the shares of Smith, Kline & French Laboratories stock which were held by the decedent, those shares of the decedent which have, to date, been sold have been sold at the insistance of the SEC by proceeding under those laws. The executors, as well as Smith, Kline & French Laboratories and the underwriters are, therefore, theoretically exposed to the liability which could arise as a consequence of the underwriting. Such liability would exist if the registration statement, preliminary prospectus or the prospec-

tus in the form filed with the SEC in connection with the registration contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading. The executors, Smith, Kline & French Laboratories and the underwriters, as well as the counsel for each of these parties, took extreme care in the preparation of all of these documents, and they have no reason to believe that any liability could arise in connection with them. The executors, as well as the other parties in the transaction, however, recognize that claims for possible liability under the Act could be filed within the period of the statute of limitations which expires late in 1975. To protect all parties to the transaction, therefore, the executors purchased Securities Act Liability Insurance from Seaboard Surety Company with a limit of liability of $18,000,000. A claim filed under the Securities Act would seek damages or rescision. Since 600,000 shares were sold in the underwriting at a price of $58.50, the theoretical liability is 600,000 multiplied by the difference between $58.50 and the price to which Smith, Kline & French Laboratories common stock may fall by the time litigation is terminated. To date, no such claims have been received by the executors, and they have no reason to believe that any such claims will be filed. They, therefore, believe that the liability protection which was purchased from Seaboard Surety Company is more than sufficient to cover any potential liability, and they believe that the Court is not required to direct them to make any further provision, except to the extent hereinafter suggested.

"The policy issued by Seaboard Surety Company provides for a self-insured retention by the executors of $100,000. In addition, the executors have agreed with *both* Smith, Kline & French Laboratories and the underwriters to retain an amount equal to this self-

insured retention. The agreement with each of these parties is that $100,000 will be retained with respect to the potential liability of each. Therefore, the executors respectfully request the Court to direct that they retain a reserve of $200,000 in satisfaction of their agreements until such time as they are advised by counsel that, by reason of the expiration of the period of the statute of limitations for filing claims under the securities laws, such reserve may be distributed. They further request that this reserve be charged one-third to the amount otherwise distributable to Mrs. Boyer and two-thirds to the amount distributable from the residuary estate to the beneficiaries of the legacies under Items EIGHTH (A), EIGHTH (B) and NINTH, in the proportions specified in Item TWELFTH."

The court directs the reserve of $200,000 as requested and finds it appropriate to charge it in the manner suggested. The court further finds this reserve plus the liability policy issued by Seaboard Surety Company to be full and adequate compliance with section 3388 of the Probate, Estates and Fiduciaries Code.

## RESERVE FOR TAXES

Accountants, in their petition for adjudication, request that in addition to the inheritance tax and the Federal estate tax already paid on February 21, 1973, that they be directed to retain reserves as follows:

a. *1972 U.S. Fiduciary Income Tax* — $4,100,000 from principal and $100,000 from income.

b. *1972 Pennsylvania Income Tax* — $22,000 from principal and $10,000 from income.

c. *Federal Estate Tax* — $4,700,000 in face amount of U.S. Treasury Bonds which are redeemable at face in payment of Federal Estate Taxes.

d. *Pennsylvania Estate Tax* — $1,700,000 from principal.

e. *Pennsylvania and Federal Income Taxes of decedent for years prior to 1972* — $500,000 from principal.

The court directs and authorizes the request for reserves for taxes and directs that the allocation of these reserves among the parties in interest shall be set forth in the schedule of distribution hereinafter directed to be filed.

Subject to distributions heretofore properly made, and subject to the views expressed in this adjudication, the net ascertained balances of principal and income are awarded as set forth under rider attached to the last paragraph of the petition for adjudication.

Counsel for accountants shall file a schedule of distribution in duplicate.

The trustees shall present the assets of the trusts herein awarded to them to David M. Jordan, Esq., who is appointed examiner under Supreme Court Orphans' Court Rule 91.

The account is confirmed, and it is hereby ordered and decreed that Girard Trust Bank, Markley H. Boyer and Paul P. Branin, executors, as aforesaid, forthwith pay the distributions herein awarded.

And now, March 14, 1973, this adjudication is confirmed nisi.